**In re E.D. WILKINS GRAIN COMPANY, Debtor.**

**Bankruptcy No. 99–92684–A–7.**

United States Bankruptcy Court, E.D. California, Modesto Division.

July 8, 1999.

---

Dennis M. Hauser, Woodbridge, California, appearing for Bank of Stockton.

Charles L. Hastings, Stockton, California, appearing for E.D. Wilkins Grain Company.

## MEMORANDUM DECISION

MICHAEL S. MCMANUS, Bankruptcy Judge.

On June 15, 1999, three unsecured creditors filed an involuntary chapter 7 petition against E.D. Wilkins Grain Company, a corporation (Wilkins). Wilkins is contesting the involuntary petition. It filed a timely answer denying that it is not paying its undisputed debts as they come due and requesting that the petition be dismissed.

On June 25, 1999, secured creditor Bank of Stockton filed a stipulation for "Complete Relief from the Automatic Stay." Wilkins executed the stipulation. The court is requested to enter an order approving this stipulation without notice to any other party in interest and without a hearing. The stipulation is accompanied by no evidence.

The Bank allegedly has a security interest in Wilkins' property, including "all present and future accounts ... [and] drafts...." The stipulation states that since March 16, 1998, Wilkins has turned over "to the Bank possession of all checks representing a payment on an outstanding invoice, the Bank depositing the check in the Company's checking account maintained at the Bank and then debiting the checking account to effect a reduction to the balance of the Bank Loan." It is clear from the stipulation that Wilkins and the Bank wish to continue this arrangement and that they seek the permission of the court to do so now and, if Wilkins is not paying its debts as they come due, after entry of an order for relief under chapter 7.

An involuntary case is commenced against a corporation when three or more entities holding unsecured, noncontingent, and undisputed claims aggregating at least $10,775.00 file a petition alleging that the corporation is generally not paying its debts as they mature. 11 U.S.C. § 303(b)(1) & (h)(1). While no order for relief is entered upon the filing of an involuntary petition, its filing creates an estate consisting of all of the involuntary debtor's property. 11 U.S.C. §§ 303(h) & 541(a). Wilkins accounts receivable, then, are part of a bankruptcy estate.

This estate is automatically protected by a stay against, among other things, the enforcement of claims and liens. 11 U.S.C. § 362(a); *but see In re Acelor,* 169 B.R. 764, 765 (Bankr.S.D.Fla. 1994). If a creditor wishes to enforce a claim or lien against property of the estate, it must first obtain relief from the automatic stay. 11 U.S.C. § 362(a) & (d). Thus, if Bank of Stockton wishes to enforce its security interest against Wilkins' assets, it must first obtain the appropriate relief from this court. This is not in dispute. The issue is whether having Wilkins stipulate to that relief will garner the necessary relief from the court. It will not.

Consider how Bank of Stockton would be required to obtain relief if Wilkins had filed a voluntary chapter 7 petition. That petition would result in the entry of an order for relief and the appointment of a chapter 7 trustee. 11 U.S.C. §§ 301 & 701. If the chapter 7 trustee were so inclined, he or she could enter into an agreement with Bank of Stockton to terminate or modify the automatic stay. However, Fed.R.Bankr.P. 4001(d)(1) prohibits the trustee from unilaterally binding the bankruptcy estate. Important constituencies, such as any committee elected pursuant to 11 U.S.C. § 705 and the United States Trustee, have the right to appear and be heard on the proposed agreement regarding the automatic stay. *See* Fed.R.Bankr.P.2002(k), 5005, & 9034.

If, prior to entry of an order for relief, the court were to permit an involuntary debtor to stipulate to relief from the automatic stay, not only would these constituencies not receive notice of the motion and

the opportunity to oppose it, the administration of the estate by any future trustee would be effectively thwarted. There is nothing in the Code or the Rules which gives such preemptive authority to an involuntary debtor.

■ Permitting an involuntary debtor the latitude to simply stipulate away the automatic stay for a future trustee would also frustrate the very purpose of arming creditors with the right to file an involuntary petition. When a debtor is not paying its debts as they come due, creditors may file an involuntary petition to preserve the debtor's assets rather than run the risk that the debtor will be financially dismembered by other creditors or its assets dissipated through the debtor's incompetence or dishonesty. Joseph Mullin, Comment, *Bridging the Gap: Defining the Debtor's Status During the Involuntary Gap Period,* 61 *U.Chi.L.Rev.* 1091 (1991).

■ During the period prior to entry of an order for relief, commonly referred to as the gap period, the debtor may continue to operate its business. *See* 11 U.S.C. § 303(f). This grant of authority, however, does not invest the debtor with the powers of a trustee. *In re Roxy Roller Rink Joint Venture,* 73 B.R. 521, 525–527 (Bankr.S.D.N.Y.1987).

In *Roxy Roller Rink,* an involuntary chapter 11 petition had been filed against the debtor. During the gap period, the debtor borrowed money. The lender then sought an order pursuant to 11 U.S.C. § 364(c)(1) requiring that the loan be repaid with priority over all claims of administration. The bankruptcy court concluded that section 364(c) was only available to a trustee and that the debtor was a trustee only if 11 U.S.C. § 1107(a) applied during the gap period. Section 1107(a) provides that " . . . a debtor in possession shall have all of the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4)

of this title, of a trustee serving in a case under this chapter." The bankruptcy court went on to conclude:

> The statutory scheme makes it evident that Code § 1107(a) does not apply to the debtor during the involuntary gap period. Code § 303(f) allows the involuntary gap debtor to operate as if no petition had been filed, unless otherwise ordered by the court. The freedom explicitly granted by Code § 303(f) to the debtor is plainly inconsistent with the fiduciary obligations imposed on a debtor by Code § 1107(a). It is unreasonable to assume that the Code intended to impose such fiduciary obligations on the unwilling involuntary debtor before the order for relief. As the involuntary gap Chapter 11 debtor cannot qualify as a "trustee", it cannot take advantage of Code § 364(b) or (c) to obtain superpriority for the claims of a lender. It is a sensible statutory scheme to preclude the debtor from taking advantage of the powers of the Bankruptcy Code, such as the right to incur debt under Code § 364 on a priming lien, superpriority basis or the right to void liens, recover fraudulent conveyances or set aside preferences under Code §§ 547 and 548, while the debtor opposes the entry for an order for relief and when no order for relief may ever be entered. *In re Roxy Roller Rink Joint Venture,* 73 B.R. at 527.

■ Not only is the involuntary gap debtor not a trustee or vested with a trustee's powers, except to the extent specified in 11 U.S.C. §§ 303(f), 502(f), 507(a)(2), and 549(b), the debtor does not have the authority to bind the bankruptcy estate during the gap period. These sections permit the involuntary gap debtor to conduct its business, use, sell, lease, and transfer property of the estate, and incur claims that may be entitled to priority treatment if an order for relief is entered. But they do not permit the debtor to waive the protection afforded to property of the estate by the automatic stay.

Some commentators have suggested that the bankruptcy court in *Roxy Roller Rink* was incorrect when it concluded the involuntary gap debtor was neither a trustee nor vested with the powers of a trustee. *See* Paul M. Baisier and David G. Epstein, *Postpetition Lending Under Section 364: Issues Regarding the Gap Period and Financing for Prepackaged Plans,* 27 *Wake Forest L.Rev.* 103, 120–121 (1992). These commentators argue: (1) 11 U.S.C. § 1107(a) gives a chapter 11 debtor in possession the powers of a trustee, other than the right to compensation; (2) a debtor is, by virtue of 11 U.S.C. § 1101(1), the debtor in possession unless and until a trustee is appointed; (3) 11 U.S.C. § 101(13) defines "debtor" without distinguishing between the gap debtor and the debtor after entry of an order for relief; (4) 11 U.S.C. § 303(g) permits the appoint of a trustee prior to an order for relief only in connection with an involuntary chapter 7 petition; therefore, (5) the involuntary gap debtor is a debtor in possession and possesses the powers of a trustee.

While this court finds the contrary analysis in *Roxy Roller Rink* more persuasive, there is no need to choose between the reasoning of the commentators or that in *Roxy Roller Rink*. Unlike *Roxy Roller Rink* where an involuntary chapter 11 petition was filed, this case involves an involuntary chapter 7 petition. There is no provision in chapter 7 for a debtor in possession nor is there any provision comparable to section 1107(a) giving the debtor the right to exercise the powers of a trustee.[1] 61 *U.Chi.L.Rev.* at 1118. *But see* 11 U.S.C. § 522(h) & (i).

Therefore, if Bank of Stockton wants relief from the automatic stay prior to entry of an order for relief, it must deal with the fact that Wilkins is not a trustee and does not have the power or authority to act for the bankruptcy estate by agreeing to terminate the automatic stay.

Because there is no one who can agree on behalf of the estate, relief from the automatic stay must be requested by an appropriate motion pursuant to 11 U.S.C. § 362(d), Fed.R.Bankr.P. 4001(a), and Local Bankruptcy Rules 4001–1 and 9014–1. That motion must be served on Wilkins and its attorney.[2] The court will also require that the motion be served on the United States Trustee, the petitioning creditors and their attorney, and any other party in interest requesting special notice. In the absence of a trustee and excluding the debtor, these persons are the most likely to have the inclination and the incentive to oppose the motion if opposition is in the best interests of the estate. Also, if they believe the debtor's failure to oppose the motion is indicative of a failure to preserve the estate, they have the right to request the appointment of an interim trustee. 11 U.S.C. § 303(g). Such relief may be requested by counter-motion. Local Bankruptcy Rule 9014–1(g).

The court will issue a separate order.

---

1. The fact that the commentators' argument does not apply in the chapter 7 context is itself a reason for discounting it in the chapter 11 context. *See* 61 *U.Chi.L.Rev.* at 1118.

2. No committee has been appointed pursuant to 11 U.S.C. § 705.